311-430-DMGL, L.L.C. v. Villa Ridge Investments, appellant by Andrew Almasy. Mr. Almasy. Thank you. Good afternoon, Justices. Good afternoon. If it pleases the Court, my name is Andrew J. Almasy. I'm an attorney from Oldwood, Illinois, working out of Peoria. Thank you for the opportunity to present my case to you today. In this matter, I represented the defendant-slash-appellant, Villa Ridge. In 2005, my client, Villa Ridge Investments, came into possession of a small apartment building, a few units. At the back of that unit is parking. Unbeknownst to Villa Ridge, this approximately 30-by-60-foot strip of land belonged actually to the plaintiff-slash-appellee. That case, the case rather, involves parking on that small strip of land. Now, initially, the judge ordered restoration damages. In other words, to repair what was there. But what I see the case, initially, having two torts committed. Sometime between 1990 and 1995, because there's affidavits from plaintiffs that say, I lived here until December of 1990, and there were no improvements back here. No changes. What I call the initial damaging trespass. And then in 1995, Mr. Gontos comes in and purchases that property with his parents. And his testimony is, there's improvements there. There's a parking lot. There's a full lot. Sometime in that five-year period, then, something had changed. There's no evidence that my client did it. No evidence from plaintiffs that he did it. So just on that basis, I had trouble with restoration damages. They didn't do this. They didn't change it. They didn't make any alterations. What they did was buy a piece of property where something had already occurred. They did, indeed, commit a tort. The tort of trespass, which did continue until this matter was resolved by the court under summary judgment. I believe for the judge to have filed restoration damages, just in light of the fact that there's no proof that a tort was committed by my client, is incorrect and against the manifest way of the evidence. Now, the judge did, at least, apply the five-year statute of limitations. I made that my second issue, just to reiterate that to go back and order these changes can't be done. They clearly had occurred way prior to 2002, which is when Plaintiff's Slash FLE came into existence. There's just nothing to go back after in that case. Are you basically saying that because the restoration damages are barred by the statute of limitations, because this had already happened, more than five years had elapsed? Is that? I believe that they're precluded from asserting those damages for more than five years. My railroad case talked about a husband transferring property to his wife. When the husband was in possession of the property, this bridge was put in and this bridge swung out. There was a piling there. That blocked access to the property. When DGML took this property, it was after this had happened. They took the property as it existed at the time they took it. The tort was not committed against them. But regardless of that, maybe it jumped ahead an issue there. It had happened more than five years ago, and I do believe that that's precluded. So I do believe the five-year statute of limitations applies in that case. But the trespass is found to have been ongoing. I agree. So the trespass is continuous, and therefore, within the statute of limitations, isn't then the restoration or the putting things back, the equitable remedy. To me, the statute of limitations then wouldn't act as a bar to those kinds of damages, or to that claim of damages, because you're saying... Well, I'm sorry. No, go ahead. I'm trying to clarify. My readings told me that a continuous trespass is one in which restoration damages might be awarded. But again, I think that jumps back to my first point, and that's why I made it. There's no evidence that my client caused those damages, and I couldn't find a single case that talked about a person who, or person, entity, that did not cause these damages to be assessed to repair those damages. And I think that's the big distinguishing point here. Thank you. Now, my third issue, whether or not someone can take land subsequent to another and be assigned to write action again, and I kind of jumped ahead in my last issue, Chicago and Alton Row Road v. Mayor. This was the defendant receiving the property from her husband subsequent to damages. What she got, what she received, was property that had that change on it. And they felt that she could not go forward and recover for that. Again, I couldn't find... You can find cases where you've got someone who purchases land, let's say... I think one was a telephone line, and there's others. You buy this land. Somebody's trespassed the property. You're now the new buyer of this land. You can take that person off. They don't hold that right to be on your property. But here, what we have is the opposite. We have someone buying property. He walks out back. There's a parking lot. He uses that parking lot. He didn't add the parking lot. He didn't put anything there. He didn't change and decide, I'll put some lines or some railroad ties or do anything else. He used it. He was wrong. He was indeed trespassing. Again, we admit that. And an injectment action is available to remove him from the property. That lasts for 20 years, roughly to the point where adverse possession kicks in. So there is an action to get him off, and a perfectly valid legal action to make sure that he doesn't use something that's not his. Again, the part I'm trying to stress is the difference between those two torts. The tort of a continuous trespass, whether innocent or not, and the tort of coming onto the land and changing it, altering it. That's what my client didn't do. And again, that's the part where I feel that it's improper here. And again, I could find no cases... But your client took the land as it was and continued to use it. Correct. That's changed. Well, at least the best my argument is, I think, is to say, if he had put in, decided, you know what, I need some more parking. Then he's making a change to the land. He's doing this initial damaging trespass to the land. That's what's going to be restored. What's to be restored when somebody just innocently trespasses? Believes he has a right to be there. Certainly has no right to be there. Certainly has to be removed. But what would the restoration damages be from someone that had made no changes or alterations to the land? It certainly shouldn't be to put the land back in a state that someone else was responsible for. I guess that's my question because, you know, from your argument, you're saying, as I understand it, that, look, maybe we trespassed, and then maybe we used the parking lot, but we didn't build the parking lot. So therefore, even though it's a continuous trespass, and any true rightful owner of the property can't bring an action for trespass against me, their damages are limited to the nature of what I actually did. In other words, if I didn't build the parking lot, they can't order me to do something about putting it back into a prior condition. But it appears that the case law seems to be against that because the case law seems to indicate that any rightful owner of the property has a right to bring an action for trespass, and the action for trespass provides you with certain damages. And one damage claim is, if you can repair the property, is to put it back into its rightful condition rather than the changed condition. No matter who did it, you can sue the trespasser for that. But I couldn't find a case, and I don't believe that the FLE cited a case in which it was done against the person that didn't make that change. I didn't find a case like that. I understand that, but I guess what I'm asking is, it appears that there's case laws saying that even any future rightful owner of the property can bring an action in trespass against anybody who's trespassing on their land. And an action for trespass allows you certain areas of damages, and part of those damages are to restore the property. So if you have a right to bring a trespass action, and you have a right to bring it to anybody who is trespassing, and this is part of the available remedies to you, I'm not aware of any case, I guess one way or the other, that stops them from asking for what are traditionally trespass damages, which can include either diminution in value or repairs to bring the property back into its prior condition. And again, I couldn't find a case that was on point. As I said, the cases I saw involving restoration value came against the person that made the change. Equity, I think, would say, we're not going to charge somebody that buys property that's unaware a change has been made, and then turn around and assess against them. I'd rather have them find or fix something that they didn't do merely because they used it, albeit wrongfully, but without making the change. I think that has to mean something, and I think equity at least would address that, if nothing else. Although, as I get to my next issue, which is issue four, what was this property held for? Appellee tried to testify, hey, occasionally I walked on it. Although, from 2002 to approximately 2007, he didn't at least walk anywhere near this part, obviously. And he did recognize, I mean, the man knew his way. And he saw something seemed different. But this is overgrown scrub timber. He talked about one day I may divide it into lots. There's a section of this abutting another section where it's sold for a lot of money, perhaps millions. And so there's a potential, depending on the real estate market when this changes, as to what that property might be worth up there. But I didn't hear anything that said this is a personal use. This isn't like First Baptist Church where we're diverting water onto your property and you can't use your parking lot. This isn't we dumped 80 truckloads of rubble into a property you're going to put your home on. This is an area of scrub land and timber. And I think even then, if the court's inclined to disagree with me, I don't think restoration is proper in a case where land's held as this is. And to set MESNY value for use, this was improved. Their expert testified. He said, hey, I looked at this, and this is what I think roughly parking would be worth. That's not the law. Ringhouse says we'll look at the value of the property as it was before it was approved, and there was just no evidence to that. So MESNY damage I don't think was proper either. Lastly, the disproportionate. And I believe in this case, restoration, again, bears no reasonable relation to the loss suffered. They came in and made these changes, whoever it was, prior to my client coming in. This property is worth somewhere between... I had shown a value of $1,000. Appellee testified that he had paid a little bit more than that for one-third undivided interest some years earlier. But to take roughly 2.2% of an acre... I don't know what that land's worth in acre, whether you take the $240,000. I don't think it's proper to assume it's worth millions. It theoretically could be, but it's not right now. We know Appellee himself set the value, approximately $250,000. The value of this piece of land is about $150. It shouldn't have been used, but to take $14,000 to put this back to a slant, really, and then landscape it seems to be way in excess of what should be done, what's reasonable. Okay. For a lot of the $14,000, didn't a lot of that include the removal of the railroad ties themselves? And my understanding is that your client, though, has said, hey, I could use those ties. And I don't know if the order itself addressed that, but was there a willingness on your client's part to take those and to get them off, and that would really reduce that, but there wasn't any consideration then in the judgment for that? The judge did not consider that. I'm not sure why it wasn't addressed in the order. It was certainly testified to by my client, and certainly something he was interested in. He's going to have to make some changes to his property. Railroad ties have worked pretty effectively for somewhere in the neighborhood of 15 years or more. The record didn't seem to reflect that there was a lot of consideration on the judge's part of that, I guess, offer or recommendation. And certainly that would still stand. I don't know if that's necessarily part of my argument, but certainly that would still stand, and he was more than willing to take that and reduce damage. Any other questions? Thank you. Thank you very much. Ms. Umholtz. Umholtz. I'm sorry. Good afternoon. May it please the Court. My name is Valerie Maile Umholtz. I represent DMGL LLC. I was the plaintiff in the trial court and the appellee in this court. Mr. Blake Lippy, the member manager of DMGL LLC, came here today to hear today's argument, so my client is also present today. This case was filed as a two-count complaint, one in ejectment and the other in trespass. As you read through the cases, you'll see that was often common. The ejectment terminates the trespass, and there's opportunities for damages within the ejectment, and then the trespass is also a vehicle for obtaining damages. So you often see these together. You see a lot of blurring between the two. In the end, there's a damage award. You don't get double damages. You don't get to add them on top of each other. They both have something... No stacking. No stacking. Thank you. There's my word. No stacking. And so a lot of times you see them kind of blended together in the cases. The liability was determined by summary judgment, and that issue is not before the court. The only issue was damages. The key issues raised by the defendant center on, I would say, the timing of the suit and the changes in ownership over time. If you look at what we're looking at here, those are the two issues as they relate to the measure of damages. I would like to just kind of summarize what I think the cases say about this. The five-year limitation can cut off a one-time trespasser. That's kind of easy. I.e., I walk on your land. If you wait six years to sue me, you don't get any damages. You don't have a cause of action. But it doesn't cut off a continuing trespass as long as it was still continuing within the last five years. That's the first, simplest way to look at the five years. The five-year then will cut off damages for mezzanine profits, loss of use, loss of enjoyment accruing before the five years, and that's what the trial judge said. I'll give you mezzanine profits. He said, I'm not going to give you loss of enjoyment in this particular case because I think it subsumed in the other damages, and the maximum I'm going to give you is five years. And then he cut that back. He made a determination that he was only going to give it back to the point that the defendant was given notice of the survey, the day he was actually, not when he was given notice by my client that he thought there was an encroachment, but the day that he was handed the survey that proved the encroachment. That was actually a part of our motion to consider, but we did not appeal that issue, that time period in there, just so you understand when you look at his damage award. In addition, injunctive relief is available for removal of structures that occurred more than five years ago. The point you made, Justice Carter, the Rosenthal case I signed, the Postal Telegraph case I signed. Those were both really old structures, been around a long time, more than five years, continuing trespass cases, orders for removal of the structures. No statute of limitations issue, I should say, on those. Rosenthal, and then the next step, this is true regardless of who owned the property, at what time, and whether consideration was paid. And that again is the Rosenthal and the Postal Telegraph case. Rosenthal, it's a little unclear from the order, but it appears that the original sewer, Rosenthal was a public storm sewer across the plaintiff's property, built in 1927. Here we are in the 80s, I think, by the time the lawsuit is filed. The municipality is sued as the defendant. It appears the municipality installed the storm sewer, although nobody really makes that clear. Because one time they referred to a drainage district, but they don't find that entity in the case. So the original installer is the defendant, we will assume from the facts. The plaintiff is down the line. He inherited it from his father, his father bought it in 1930  The plaintiff is entitled to a recovery. And one of the things they're entitled to in that case is the removal of that structure. That's what the court rules. The court says, I'm not going to enjoin it right now, because the municipality also has the right of eminent domain, and if you guys can't work this out, and they don't buy it, then yeah, I'm going to order them to remove it. Postal Telegraph was a case where neither party was in there in the beginning, just like our case. The original telegraph company that put the telegraph lines in is no longer an owner or owner of the lines or anything else, and the person who owned it at the time that they were put in is not the plaintiff. So we're in the same boat we are here. Strangers to the original transaction are the parties to the case. Postal Telegraph was an injectment case. And the court ordered the remedy of ejectment to remove the telegraph lines, to remove the offending structure. Not to just stop sending airwaves of telegraph across them, not to just stop parking, so to speak, on the telegraph poles, but to actually move them from the property. Injunctive relief, the restatement also is cited in Rosenthal, which kind of follows that theory that if possessory interest in the land has been transferred subsequent to the placing of the thing on the land, the transferee may maintain an action for its continuance there. It's kind of more in the trespass area, but again, they address it a little bit in the restatement. However, injunctive relief is not always the best remedy in these cases. Removal often can be substituted with damages. In other words, you don't have the offending party remove the structure, you grant the restoration costs to the aggrieved party. We see injunctive relief in Rosenthal and Postal Telegraph because we're dealing with quasi or public, quasi-public or quasi-public improvements. You don't want the aggrieved landowner out there restoring their land, tearing up the storm sewer, or pulling down the telegraph lines. You want the person that has the operations at each end of it and is perhaps impacting the general public to be the one doing that. So injunctive relief was more appropriate in those cases than restoration damages. Therefore, they're not damages cases, but they have the same result. The First Baptist case, which was the church case, involved the toll authority making improvements on the tollway that created an inundation of water, a trespass. The court said we're not going to enjoin the toll authority and force them to remove their structures. It doesn't make sense in that case. We're going to restore the plaintiff's land in a way that protects them from the inundation of the water. So that's an example where, although injunctive relief was an option, the court substituted restoration damages. So they are interchangeable, depending, I think, on what public policy you're dealing with in this case. Here we have two private parties. We requested injunctive relief in our injectment count, and we also requested damages. The court awarded us the restoration damages, I think because, although he doesn't stand in his order, is it capable of a monetary award? It was. And therefore, the court followed that line. Here, the plaintiff is no doubt damaged. The plaintiff is no doubt entitled to a remedy, including return of his land, and use of his land for its intended purposes, which is not a parking lot. Of all the purposes talked about, this gravel parking lot jutting out with railroad ties that he can't get to is not one of his purposes. And the damage award attempts, as the trial court said and as the cases say, attempts to put the plaintiff in as good a position as held prior to the tort. It is not erroneous as a matter of law, the trial court's award here, for restoration damages and mezzanine processes, not erroneous as a matter of law, and the trial court did not ignore the evidence. If the property is put into the position that it would have been before the parking lot was built, then where's the theory for the $1,600 in mezzanine? That's the loss of use. You're entitled to a loss of use of your property. But if it was in the Baptist case, did the church get mezzanine? I don't remember if they asked for it. I'm just wondering if it's restored back to its original use, the original use wouldn't have been a parking lot and wouldn't be entitled. I'm really troubled by both. And maybe stacking. Are there cases that allow both? Yes, there are definitely cases that allow both. Because the occupancy itself is an element of damage. Just being there is damage. Sometimes we see them as nominal damage cases. The judge didn't give any damage for the loss of use. He weighed all of that and said, all I'm going to do is mezzanine process and restoration. I'm not going to give my loss of enjoyment damages on top of that. He could have, I think, but he chose not to. And it's not worth talking about, so to speak, from that standpoint. So you definitely have the opportunity for both of them. Not only getting them off your land, but making them pay for the time they were there. The whole disproportionate argument here, I want to make clear that the judge made a factual finding that my client's property was worth in the hundreds of thousands of dollars. That was a factual finding of the court that was not appealed. So it's not worth $81,000, period. I mean, the judge made a factual finding. That finding was an appeal to this court. I think that when you look at disproportionate, you're looking at disproportionate to the value of the whole property. Restoration damages will never be allowed if you look at the little piece that we're dealing with. The disproportionality rule looks at the whole. And that's what the judge did. And the judge's decision in that regard was consistent with the cases. The railroad tie issue, the judge chose not to fashion a combined remedy of injunctive relief and damages. Could the judge have done that? I don't know, probably, but he chose not to. And I think his decision is consistent with the law and the facts, and therefore it would be affirmed by the court. If the court would for some reason find something in the judge's decision was not consistent with the facts or was erroneous as a matter of law,  to reassess the damages. It's clear that he did some weighing. He did some giving and taking, making an attempt to come up with a remedy that would make the plaintiff whole. He chose not to award certain areas of damages in lieu of other areas. And therefore, if this court would find some reason to reverse, we would ask that it be remanded to the trial judge for him to remake that assessment, having a full knowledge of the facts. If he had allowed the injunctive relief, then the landowner or the apartment complex owner could remove and keep the railroad ties. He would have had to incur all the costs and responsibility and liability to do that. But that places the burden on him to do that, which can create a whole other set of issues and litigation, et cetera. And there is an adequate remedy at law, i.e. damages, shifting that over to the plaintiff to do that. And so that was, I mean, that's the outcome of the damages award versus the... Counsel, you have two minutes. Thank you. There's nothing that would prohibit him from requesting permission to remove those ties. There's nothing to prohibit the parties from negotiating their own settlement of the case in light of the court's damage award. But that's not before the court, and we would not discuss that with the court. So, I mean, it's not that it's not impossible, it's just that it's not before the court. Right. Any other questions? I just want to go back to the award of the two different kinds of damages. Only as, under the court's order, he finds that there's no diminution of the fair market value. He goes on, well-reasoned, and says that I'm going to find that restoration damages are appropriate. And then he says, and I'm not going to give him the extra $33,000, $35,000. He says there's no loss of enjoyment to the property. And then he goes on to say that the worth of use of the rental value company comes out with the $1,620. I guess my question does relate to then, says that the restoration damages are the $15,547, and is the $1,620 the rental value? Is the only way that you get to the rental value is because you have the gravel parking lot there? I mean, would there have been any rental value to that corner had it not been improved by the trespass? There was no evidence one way or another on that. No one was asked. Nobody presented evidence on whether there was value as absent the parking lot. There is always a value in use. I think there's always a value in use. The only evidence of value in use was the evidence presented by the plaintiff in this case. There was no contradictory evidence presented by anybody else. And so what was the value in use if there wasn't a parking lot there? There was no evidence of that one way or another. So the value of use then is testified to by the appraiser as it was, as it was situated with the improvement. And how it was used. In other words, even if it wasn't a gravel, even if there hadn't been railroad ties, et cetera, there, if they had been parking there, even if they had just parked there, okay, all right, that's what the use was,  that permitted the parking. So I guess I'm a little confused. I thought that there was a buildup of this to make this. It's not a buildup. It was actually a pushback. Okay, the railroad ties are a retaining wall of my client's property. They dug out, somebody dug out my client's property to push this parking lot back and built a retaining wall. So therefore, when the retaining wall comes down, you'll see there's all this grating to keep the trees from falling in on the parking lot, right? So there's a pushback in the building of this to make that happen as opposed to hauling in dirt and building it up and dropping it. Instead of a cliff, it's a mountain. How high is the retaining wall? It's not very high. There's some pictures in there. It's not real high. I mean, we're not talking 20 feet or anything. Okay, so it's not real high. Anything else? I know I'm over my time. Anything else? All right, thank you very much. Mr. Almasi. Thank you. I really felt in my reading of the law that the only damages that were allowed should be diminution values. I don't think they showed diminution. I don't know that there was diminution in the values. Council went over Rosenthal and said, hey, we've got a subsequent purchaser. We certainly had someone that leased the right to use telephone poles. And they said, hey, you can't use those or there's going to have to be something paid. I think that's different than what we have here. In the First Baptist, they said, here's the standards. Realty has to be held for a personal rather than a business use. Is the injury capable of repair? And can the repair be accomplished without expending amounts wholly disproportionate to the value of the land? I think an argument that says, gee, we're going to spend $14,000 on this 30-by-60-foot area.  I can't think of a good example. I mean, it's almost as though you're spending $10,000 on a tire, which is more than anybody would ever pay for a tire because the car itself is worth $40,000. I don't think that's a good argument. I don't think it's the proper argument to make. This is a lot of money for a very small strip of land. Again, something that my client did not do. And I don't think I have anything else I really want to stress again. Thank you. Thank you. We thank you for your arguments. We'll be taking the matter under advisement and recessing for eight minutes.